Austin W. Wright and William W. Catlin, his Assignee, v. Charles L. Hutchinson, Ernest A. Hamill and Margaret F. Cudahy.

1. Assignment for the Benefit of Creditors—*Contemporaneous Conveyances.*—A person who is not a creditor can not maintain a bill to have contemporaneous conveyances of personal property declared an assignment for the benefit of creditors.

2. SAME—*Partner of Assignee.*—Where, two partners being insolvent, one made an assignment for the benefit of creditors, and the other, denying joint liability, made a trust deed of his individual property to secure the payment of his individual debts, *it was held* that a bill by his co-partner and assignee would not lie to have the deed declared an assignment.

**Memorandum.**—Bill for relief. Appeal from the Circuit Court of Cook County; the Hon. SAMUEL P. MCCONNELL, Judge, presiding. Heard in this court at the March term, 1894, and affirmed. Opinion filed May 28, 1894.

The opinion states the case.

COLLINS, GOODRICH, DARROW & VINCENT and GREGORY, BOOTH & HARLAN, attorneys for appellants.

DUPEE, JUDAH & WILLARD, attorneys for Hutchinson and Hamill, appellees.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This cause comes here on appeal from a decree sustaining a demurrer by the appellees to a bill filed by the appellants against them, impleaded with John Cudahy, and dismissing the bill as to the appellees for want of equity.

We adopt the statement of the bill made by appellants' counsel in their brief as follows:

"It appears by the bill that in April, 1893, Wright and Cudahy entered into an agreement to buy and sell, on joint account, mess pork, on the Board of Trade in Chicago, and to share equally in the profits and losses resulting from such venture. In accordance with what seems to be a not unusual custom on the board, each of them was to buy as he saw fit and sell pork on the Board of Trade, either for present or future delivery, each conducting his transactions in his own name and upon his own personal responsibility. At that time each of the parties had bought considerable pork, and it was agreed that their joint deal should cover the pork which they had each severally so purchased. This arrangement continued until about the last of May of the

Wright v. Hutchinson.

same year, when Cudahy represented to Wright that the financial condition was becoming such that it was difficult to borrow money, and the rumor that he was engaged with Wright in this venture, made it more difficult for various firms and companies in which he was interested to carry on their business, and that those interested with him engaged in packing, etc., desired to have all the pork which he had bought, and which stood in his name, transferred, so that the contracts therefor should stand in the name of Wright, which was accordingly done. Cudahy did not then express any intention of withdrawing from his part of the venture, but it was understood between him and Wright that all of these ventures were to be carried on strictly for the joint benefit and account of Cudahy and Wright, but solely in the name of Wright.

Owing to the continued decline in provisions on the Board of Trade, Cudahy suspended on the 1st of August, 1893, and became insolvent, and on the 2d of that month Wright executed a voluntary assignment to his co-complainant, Catlin. Prior to the insolvency of himself and of Cudahy, Wright paid out on account of losses incurred upon these joint ventures the sum of $230,000. The unpaid indebtedness of him and Cudahy on account of such joint ventures aggregates $350,000. Cudahy never paid out or contributed any sum whatever in payment of the losses so incurred. Wright's estate has paid a dividend of five per cent to the creditors of Wright and Cudahy, and may possibly pay perhaps three per cent more. Cudahy now claims that he is not jointly responsible with Wright, and declines to account with him or Catlin, or to settle the partnership accounts between him and Wright in any way. Soon after the failure of Cudahy, some time in the month of August last, he caused to be circulated among his creditors a paper, commencing as follows:

" We, the undersigned, creditors of John Cudahy, hereby agree to accept in full settlement of claims and demands which we have at this date against him, individually or jointly with any one else, his notes for fifty per cent of the

amounts due us, and each of us, said fifty per cent of our claims and demands being as follows :"

Here follows a long list of signatures with the amounts of the various claims of the parties signing, figured on the basis of fifty per cent. The paper further provided that the payments should be secured by a trust deed given to Charles L. Hutchinson, one of the appellees, covering certain real estate in Cook county which was described therein, and also that certain other securities should be placed in the hands of the trustees to secure the payment of these notes. The trustee was given power to sell and dispose of the real estate and other securities at any time before the maturity of the notes whenever best in his judgment and for the advantage of the creditors and Cudahy. It was further provided that at any time before the disposition of said real estate and securities, Cudahy might release any of the same by paying into the hands of the trustee the amount in cash set opposite each piece of said real estate and opposite each of the other securities, and thus have the same released from the operation of the trust. Afterward Cudahy offered to each of his creditors his note for the remaining fifty per cent of his indebtedness, and as additional security for the payment of all of his notes, his five notes for $100,000 each, payable in one, two, three, four and five years after date, respectively, to be indorsed by his brothers, Michael, Patrick and Edward Cudahy, and to be placed in the hands of Hutchinson, trustee.

This arrangement was carried out and assented to by the great majority in number and amount of his creditors, and the property therein referred to was duly transferred and conveyed to Hutchinson, and the notes therein referred to duly executed, and on the 18th day of August, 1893, John Cudahy, with his wife, who is also a defendant to the bill, executed and delivered to Hutchinson a deed of trust, conveying to him in trust, for the purposes of this arrangement, the real estate referred to in the first proposition to his creditors, which is more particularly described in the deed. Ernest A. Hamill, the third appellee, is successor in trust

in this deed of trust. The bill further alleges that there was neither joint property nor any joint fund, owing to the method in which the business of the partnership between Wright and Cudahy was conducted, and that by the assignment to Hutchinson a trust is created in favor of the creditors of Wright and of Cudahy, which should be enforced, in view of the fact that Wright had paid upward of $230,000, on account of the debts and losses of this partnership, and his estate had paid the further sum of $20,000. It is also alleged, on information and belief, that Cudahy has large amounts of property other than that by him conveyed to Hutchinson, and that sundry persons named were at the time this proposition was made to them by Cudahy, creditors of Wright and Cudahy as partners, in a considerable amount. The bill prays an accounting of the partnership, that a receiver may be appointed, that Cudahy may be decreed to pay to such receiver such sum as shall upon a full accounting appear to be due from him, and that the transfer from Cudahy to Hutchinson be decreed to be an assignment for the benefit of all the creditors of Cudahy, and that Hutchinson be removed and some suitable person appointed to administer upon the estate in the hands of Hutchinson, and act as receiver in the case.

As to the defendant, John Cudahy, who also demurred to the bill, the demurrer was overruled, presumably on the ground that as to him a case was made for a partnership accounting, but as to the appellees the demurrer was sustained and the bill dismissed for want of equity.

As stated by appellants' counsel, the theory upon which the bill is sought to be maintained as against the appellees is, that the transfers by Cudahy to Hutchinson are in effect a general assignment for the benefit of all his creditors, and that the relation of Wright, and Catlin, his assignee, to this transaction, is such that they are entitled to invoke the jurisdiction of equity to enforce the trust thus created for the benefit of such creditors of Wright and Cudahy.

We are unable to see upon what ground either Wright, or his assignee, Catlin, may maintain this bill against Hutchinson and his co-appellees.

Wright is not, at present at least, in the attitude of a creditor of Cudahy, and his assignee is merely another self to him.

Assuming that under the rule adopted in Farwell v. Cohen, 138 Ill. 216, the trust conveyance by Cudahy to Hutchinson operated, by construction of law, as an assignment for the benefit of creditors—not of Cudahy alone, but also of the partnership of Wright and Cudahy—Wright himself is in no position to claim in a court of equity the benefit of such a trust as would be thereby created.

The case of Preston v. Spaulding, 120 Ill. 208, is not in point, if for no other reason than that there Spaulding was a creditor, while here Wright is not, and for anything appearing in the bill may never be. The mere fact that Wright has paid more of the partnership losses than have been paid by Cudahy, while probably availing much in the matter of an accounting between them, entitles him to no standing in equity against Hutchinson, the trustee for Cudahy's individual creditors.

*Non constat* but that Wright may have received profits to an extent equal to, or exceeding the losses he has paid in the partnership transactions, and he may not even have anything of Cudahy until there has been a full accounting between them.

How, then, may he claim to be a beneficiary of the trust conferred upon Hutchinson for the use of Cudahy's creditors?

It is doubtful, even, if the partnership creditors could resort to a court of equity to enforce their claims against the trust bestowed upon Hutchinson. There were other elements of an equitable character than the mere relationship of a creditor, that gave jurisdiction in the case of Preston v. Spaulding, *supra.*

It would seem as if under the doctrine of Farwell v. Cohen, the only forum for the partnership creditors, even, to resort to, under the facts as made to appear by this bill, in order to obtain to themselves the benefit of the trust to Hutchinson, would be the County Court.

We make this remark, however, not by way of decision, for the question is not in this case, but to place in a yet stronger light our conclusion that a court of equity can not afford Wright, who is not even a creditor, the relief asked by this bill.

No precedent that we are aware of will warrant maintaining such a bill, and it would be opposed, in our opinion, to reason and principle to sustain it.

The decree of the Circuit Court dismissing the bill as to these appellees, will therefore be affirmed.